**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL ASKIN,** *on behalf of himself* *and all others similarly situated,* | ) ) ) | **11 CV 111** |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **Magistrate Judge Young B. Kim** |
| **THE QUAKER OATS COMPANY,** | ) ) | |
| **Defendant.** | ) ) | **October 12, 2011** |

**MEMORANDUM OPINION and ORDER**

In this diversity suit brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, *et seq.*, and Illinois common law, Daniel Askin claims that The Quaker Oats Company ("Quaker") lures consumers into buying its oatmeal and granola products by touting them as being (among other things) "wholesome" and "heart healthy," when in reality the products contain unhealthy trans fats. Askin hopes to represent a nationwide class of consumers who purchased products bearing allegedly deceptive labels. Currently before the court is Quaker's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (R. 38.) For the reasons set forth below, the motion to dismiss pursuant to Rule 12(b)(1) is denied and the motion to dismiss under 12(b)(6) is denied without prejudice to refiling following this court's resolution of Quaker's separate motion to dismiss under the first-to-file rule.

## Procedural History

Askin filed the current suit in January 2011 and amended the complaint six months later, alleging that certain Quaker labeling and marketing practices violate ICFA and that he is entitled to recover based on Quaker's alleged unjust enrichment and breaches of warranties. (R. 1, 22.) According to Quaker, the allegations in the amended complaint describing the dangers of trans fats and the labels used in the accused products are largely copied from complaints filed by purported class-action representatives pursuing earlier-filed, similar claims against Quaker in the Northern District of California. After the parties consented to the jurisdiction of this court, *see* 28 U.S.C. § 636(c); (R. 25), on July 7, 2011, Quaker moved to dismiss the amended complaint under the first-to-file rule, arguing that the case before this court is duplicative of the preexisting California actions, (R. 32 ¶ 4). That same day Quaker filed the current motion to dismiss, arguing that Askin lacks standing to pursue his claims and that the suit should be dismissed for failure to state a claim. (R. 38.)

Three days after Quaker moved to dismiss the amended complaint, four named plaintiffs from the California actions moved to intervene in this case for purposes of filing their own motion to dismiss under the first-to-file rule. (R. 46.) This court allowed the parties to brief the motion to intervene, but once it became clear that the arguments proposed by the California plaintiffs are not jurisdictional in nature, the court entered an order noting that the jurisdictional questions raised by the current motion to dismiss must be resolved

2

before the court can address the non-jurisdictional arguments raised in the motion to
intervene and in Quaker's first-to-file motion.  (R. 56.)

## Facts

This court accepts as true the allegations in the amended complaint for purposes of
reviewing the motion to dismiss under Rule 12(b)(1).  *See Long v. Shorebank Devp't Corp.*,
182 F.3d 548, 554 (7th Cir. 1999).  The relevant aspects of those allegations are as follows.
Since January 7, 2006, Quaker has "engaged in a wide-spread marketing campaign to
mislead consumers about the nutritional and health qualities of its Products."  (R. 22, Am.
Compl. ¶ 2.)  Specifically, Quaker states on its packages and in its marketing campaigns that
its products contain "0 grams trans fat," are "wholesome" and "heart healthy," and constitute
nutritious "smart choices made easy."  (Id. ¶ 3.)  These descriptions are misleading, says
Askin, because in reality the products "contain highly unhealthy, unwholesome artificial trans
fat."  (Id. ¶ 4 (emphasis omitted).)  Askin cites studies finding that dietary trans fats
contribute to heart disease, Type 2 diabetes, and cancer.  (Id. ¶¶ 5-6.)

Askin alleges that he has been injured by Quaker's misleading campaign because he
purchased its Chewy Granola Bars and Instant Quaker Oatmeal for himself and for his son
relying on the allegedly deceptive statements found on the labels.  (Id. ¶ 10.)  According to
Askin, he paid a premium for the Quaker products because he believed that they contained
zero grams of trans fat.  (Id.)  He alleges that he would not have paid that premium had he
known that the products contain trans fats in the amount of less than .5 grams per serving but

up to 5 grams per box. (Id. ¶¶ 10, 64.) Because the products contain trans fats, Askin alleges that the health-related statements on the packaging are misleading. (Id. ¶ 10.)

## Analysis

In the current Rule 12(b)(1) motion, Quaker argues that the amended complaint should be dismissed for lack of jurisdiction because Askin lacks standing to pursue his claims. The jurisdictional standing requirement is part of the Article III limitation of judicial power to situations in which the plaintiff can demonstrate a "case" or "controversy" between himself and the defendant. *Pollack v. United States Dep't of Justice*, 577 F.3d 736, 739 (7th Cir. 2009). To satisfy this requirement, a plaintiff must show that he has standing, meaning he has suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2752 (2010). The standing requirements "are rather undemanding." *Family & Children's Center, Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994) (internal quotation omitted). As long as the plaintiff has shown that he has "an actual stake in the outcome that goes beyond intellectual or academic curiosity . . . even a minor or non-economic injury will satisfy the strictures of Article III." *Id.*

Quaker argues that Askin's premise for establishing standing—that he paid a premium for Quaker's products based on the alleged misrepresentations regarding the products' ingredients—does not describe the kind of injury-in-fact required to create a case or

4

controversy between the parties. Because the economic injury Askin cites is tied to what

Quaker describes as a "'health concern' that is hypothetical at best given the 'insignificant'

amounts of trans fat" in its products, Quaker argues that the alleged premium does not

represent a real injury. (R. 39, Def.'s Mem. at 4.) The Seventh Circuit recently rejected a

similar argument in a products-liability class action involving a toy called Aqua Dots—a

product made up of beads that can be fused into shapes when wet. *In re: Aqua Dots*

*Products Liability Litigation*, __ F.3d __, 2011 WL 3629723, at *1 (7th Cir. Aug. 17, 2011).

In *Aqua Dots*, the defendant manufacturer instituted a recall after several children ate parts

of the toy (which resembled candy) and became seriously ill. *Id.* The plaintiffs—all Aqua

Dots purchasers—challenged the recall program even though their children were not harmed

by the toy. *Id.* In their class complaint, the plaintiffs alleged, among other things, that the

defendant made false and misleading representations about Aqua Dots. *In re: Aqua Dots*

*Products Liability Litigation*, MDL No. 1940, 1:08-CV-2364 (N.D. Ill.) (R. 15 at 31-33).

The defendant argued that because none of the plaintiffs or their children were physically

harmed by Aqua Dots, they lacked standing to sue. 2011 WL 3629723, at *1. The Seventh

Circuit rejected this argument, stating that the lack of physical harm:

> means that members of the class did not suffer physical injury, but it does not
> mean that they were uninjured. The plaintiffs' loss is financial: they paid more
> for the toys than they would have, had they known of the risks the beads posed
> to children. A financial injury creates standing.

*Id.* Similarly, here Askin alleges that although he has not been physically harmed by

Quaker's products, he paid more for those products than he would have had he known they

contain an ingredient he was determined to avoid because of its known health risks. That price differential represents a concrete injury-in-fact. *See id.*; *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-50 (7th Cir. 2000) (noting that the price increase resulting from a challenged liquor-distribution law constitutes a source of injury); *Central Laborers' Pension Fund v. Sirva, Inc.*, 04 CV 7644, 2006 WL 2787520, at *3 (N.D. Ill. Sept. 22, 2006) (holding that the plaintiff sufficiently alleged standing where it purchased stock at inflated price based on the defendants' alleged misstatements).

In arguing that Askin's injury is too speculative to support a false advertising claim, Quaker relies on decisions which are largely distinguishable based on what the plaintiffs in those cases knew at the time they purchased the accused products and the nature of their allegations. For example, *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x 257, 258 (3d Cir. 2010), involved a plaintiff who sued a cosmetics manufacturer after discovering that the lipstick she purchased contained trace amounts of lead. The Third Circuit concluded that the plaintiff lacked standing because she had "asserted only a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her." *Id.* at 259. But there, "[n]either the packaging nor the products themselves contained any indication that the lipstick contained any lead," *id.* at 258, so unlike Askin, Koronthaly could not argue that she paid a premium for the purchased product based on an affirmative misrepresentation that it was lead-free. Similarly, in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 316-17 (5th Cir. 2002), the court held that the plaintiffs who purchased and used a pain medication without suffering any

side effects lacked standing to sue the medication's manufacturer after learning that other patients who took the drug suffered liver failure. But again, there the plaintiffs were alleging liability based on a failure to warn of an injury they did not sustain, whereas here, Askin alleges an economic injury based on his decision to purchase Quaker products at a premium after being enticed by misleading health claims. The *Rivera* plaintiffs simply did not have the same kind of "I paid a premium" argument that Askin relies on to support standing here. Other cases on which Quaker relies similarly lack a claim that the plaintiffs were lured into buying the accused product based on a representation that an ingredient was not present in the product, when in fact it was. *See Herrington v. Johnson & Johnson Consumer Cos., Inc.*, C 09-1597 CW, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (no standing where plaintiffs purchased products later found to contain potential carcinogens); *Levinson v. Johnson & Johnson Consumer Cos., Inc.*, 09 CV 3317, 2010 WL 421091, at *4 (D. N.J. Feb. 1, 2010) (same).

Perhaps the closest case that Quaker cites in support of its argument is the recently issued decision in *Hughes v. Astrue*, 1:10-1407-SEB-DML, 2011 WL 3877120, at **3-4 (S.D. Ind. Aug. 31, 2011). The plaintiffs in *Hughes* sued the manufacturer of a diet aide called Dexatrim, alleging that they purchased the product based on the defendant's representation that Dexatrim did not contain a dangerous substance called hexavalent chromium, when in fact it did. *Id.* at *1. Like Askin, the plaintiffs in *Hughes* were not harmed physically, but alleged standing based on the economic injury stemming from their

decision to purchase Dexatrim in reliance on the defendant's alleged misrepresentations. *Id.* at *3. The court rejected the plaintiffs' standing assertion, stating that the cost of their Dexatrim purchases did not cause "any real 'drain' on their personal financial resources." *Id.* at *4. But as the Seventh Circuit made clear in *Aqua Dots*, even a minor out-of-pocket loss can provide the requisite injury for standing. 2011 WL 3629723, at *1; *see also Family & Children's Ctr.*, 13 F.3d at 1058 (noting that even a minor injury satisfies Article III requirements). Nor does the *Hughes* decision's reasoning that the plaintiffs had nothing but an unfounded fear of physical injury translate well here. *See* 2011 WL 3877120, at *6. Askin has alleged that whether or not the amount of trans fats present in Quaker's products are harmful, had he known that trans fats were present in the products he purchased, he would not have bought them. Suppose Askin were a vegan, refusing to eat meat because of his objections to the conditions involved in American factory farming. Suppose further that he purchased food products that were labeled as containing "0 grams of animal products," only to find out later that the food contained trace amounts of animal fat. Askin could not argue in that situation that he had been harmed physically, but it would be obvious that he would not have purchased the products absent the labeling message, and that once he discovered the food's actual content, he could not consume it. The economic harm in that hypothetical situation mimics the injury at play in *Aqua Dots*, and extends to Askin's decision to avoid trans fats as well.

8

Moreover, the Northern District of California considered and rejected Quaker's standing argument in the similar lawsuit unfolding there. *See Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1124-25 (N.D. Cal. 2010). In *Chacanaca*, Quaker argued that the plaintiffs lacked standing to challenge their labeling practices under California consumer fraud statutes because they had not suffered any health problems from consuming the allegedly mislabeled products. *Id.* The court zeroed in on the "premium" aspect of the plaintiffs' standing argument:

> The injury alleged here is the *purchase* of food products that contain an ingredient the plaintiffs find objectionable. Had they known about the trans fat content, they insist, they would not have purchased the product. Defendant's health-based harm argument misses the mark, as plaintiff have adequately alleged an injury directly related to the redress they seek.

*Id.* at 1125. Here too, Quaker's attempt to tie the injury in question to its substantive arguments regarding the merits of Askin's claims misses the target. Regardless of whether Askin was physically harmed by the products he consumed, he alleges that he would not have purchased them absent the allegedly misleading statements. That allegation states the kind of economic injury that is redressable through this suit. *See Aqua Dots*, __ F.3d __, 2011 WL 3629723, at *1. Accordingly, the motion to dismiss for lack of standing is denied.

The court notes for purposes of clarification that Quaker frames one of its arguments regarding the *merits* of Askin's ICFA claim as a "standing" problem. Specifically, it argues that Askin has no "standing" to sue under ICFA because he purchased the accused products in New York, the state where he resides. (R. 39, Def.'s Mem. at 14.) But whether a resident

9

of a state other than Illinois can sue under ICFA is a merits question, not a jurisdictional

standing question. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535-36 (7th Cir. 2011).

The question will turn on choice-of-law principles, and "has nothing to do with *standing . . .*

[t]hat a plaintiff's claim under his preferred legal theory fails has nothing to do with subject-

matter jurisdiction." *Id.* at 536 (emphasis in original). And because that question goes to the

merits of Askin's ICFA claim, rather than this court's jurisdiction, the court concludes that

as a practical matter it makes sense to reserve ruling on this and Quaker's other Rule 12(b)(6)

arguments until after Quaker's motion to dismiss under the first-to-file rule is resolved. One

of the core arguments underlying the first-to-file motion is that it would waste judicial

economy for this court to decide the same substantive issues being determined in the earlier

filed California cases. (R. 33, Def.'s Mem. at 6.) Accordingly, and without expressing any

opinion as to the merits of the first-to-file motion, this court concludes that it should reserve

ruling on the Rule 12(b)(6) arguments—which raise issues that are being litigated in

California—until after it decides whether this case survives Quaker's attack under the first-

to-file rule.

**Conclusion**

For the foregoing reasons, the motion to dismiss pursuant to Rule 12(b)(1) is denied.

Askin has adequately alleged that he has standing to pursue his claims. Quaker's motion to

dismiss under 12(b)(6) is denied without prejudice to refiling following this court's

resolution of Quaker's separate motion to dismiss under the first-to-file rule.

**ENTER:**

Young B. Kim
**United States Magistrate Judge**

11