## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL ASKIN, on behalf of himself and all others similarly situated,** | ) )  ) | **11 CV 111** |
| **Plaintiff,** | ) ) | |
| **VICTOR GUTTMANN, et al.,** | ) ) | |
| **Intervening Plaintiffs,** | ) | |
| **v.** | ) ) | **Magistrate Judge Young B. Kim** |
| **THE QUAKER OATS COMPANY,** | ) ) | **February 15, 2012** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

This suit represents the fourth of five putative class actions brought against The Quaker Oats Company ("Quaker") alleging that Quaker entices consumers to buy certain of its granola and oatmeal products by misleadingly labeling them with phrases such as "heart healthy," "wholesome," and "smart choice made easy." The other four suits were brought in federal court in California and are currently proceeding there as one consolidated action seeking nationwide class relief under California's consumer protection statute. In this case, Daniel Askin hopes to represent a nationwide class based on what he alleges are Quaker's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, and Illinois common law. Currently before the court are the motions of Quaker and the intervening plaintiffs—Victor Guttmann, Kelley Bruno, Sonya Yrene, and Rebecca Yumul—to dismiss this lawsuit under the first-to-file rule. (R. 32, 78.) For the

following reasons, the motions are denied to the extent that the moving parties seek dismissal, but this action is stayed pending the outcome of the currently pending motion to dismiss—or alternatively, the class certification proceedings—in the consolidated California action:

## Background

This court has described the details of this case's procedural history in previous opinions resolving Quaker's motion to dismiss for lack of standing and the intervening plaintiffs' motion to intervene, *see Askin v. Quaker Oats Co.*, 2011 WL 5008524, at *1-*2 (N.D. Ill. Oct. 20, 2011); *Askin v. Quaker Oats Co.*, __ F.Supp.2d__, 2011 WL 4840704, at *1 (Oct. 12, 2011), but what follows are the background highlights most pertinent to the questions of comity presented in the current first-to-file motion.

Askin is a New York resident who alleges that he purchased Quaker products in New York based on allegedly misleading representations Quaker created in Illinois. (R. 22, Am. Compl. ¶¶ 9-11.) He filed the current suit on January 7, 2011, (R. 1), 11 months after the first of the suits now consolidated in California was filed, (R. 33, Def.'s Mem., Ex. 1), and several weeks after the second and third California suits, (id. Exs. 2 & 3). When Askin filed his complaint here, a motion to consolidate the California actions was pending in the Northern District of California and the California plaintiffs had lodged a proposed consolidated complaint.

2

Before the motion to consolidate was resolved, Askin filed a motion before a multi-district litigation ("MDL") panel to transfer the California actions to Illinois under 28 U.S.C. § 1407. Askin asserted that both his Illinois case and the California actions "are premised upon claims that Defendant misrepresented the health quality of certain of its food products, such as granola bars and oatmeal, because those products contain trans-fat, an artificial ingredient that the medical community has denounced as extremely harmful to one's health." (R. 48-6, Ex. F, MDL Br. at 1.) In April 2011 the MDL panel denied Askin's motion, concluding that the parties to the various suits against Quaker "have every ability to cooperate and minimize the possibilities of duplicative discovery and inconsistent pretrial rulings." (R. 48-2, Ex. B at 2.) The MDL panel determined that the filing of Askin's case in Illinois "is insufficient reason at this point to centralize these proceedings." (Id.)

On June 14, 2011, the three California cases—along with a fourth filed after Askin's—were consolidated before Judge Seeborg in the Northern District of California. (R. 48, Marron Decl., Ex. D.) Although Reese Richman—the law firm representing Askin here—sought appointment as interim class counsel, Judge Seeborg appointed the Weston Firm and the Law Offices of Ronald A. Marron as interim class counsel in the consolidated actions. (Id.) Three days later, Askin filed his first amended complaint in this court, adopting 69 paragraphs from the consolidated complaint nearly verbatim. (*Compare* R. 22, First Am. Compl., *with* R. 33, Def.'s Mem. Ex. 5, Consol. Compl.) For example, both complaints allege that Quaker misleads consumers about the nutritional qualities of its

Quaker Instant Oatmeal, Quaker Chewy granola bars, and Quaker Oatmeal to Go by failing to disclose that those products contain artificial trans fat. (R. 22, Am. Compl. ¶¶ 1, 4; R. 33-5, Ex. 5, Consol. Compl. ¶¶ 4, 14.) Both complaints include the heading "Summary of the Strong Evidence of Artificial Trans Fat's Health Hazards," with pages of literally identical language describing what are alleged to be the dangers of ingesting trans fats. (*Compare* R. 22, Am. Compl. ¶¶ 25-55, *with* R. 33-5, Ex. 5, Consol. Compl. ¶¶ 31-59, 61-63.) And the complaints include identical language alleging that Quaker's use of the labels "Heart Healthy," "wholesome," "hearty healthy," "quality," and "goodness in every bowl" are false and misleading in light of the presence of refined sugar and trans fat. (R. 22, Am. Compl. ¶¶ 58-63, 65-75; R. 33-5, Ex. 5, Consol. Compl. ¶¶ 67-83.)

After the parties consented to the jurisdiction of this court, *see* 28 U.S.C. § 636(c), on July 7, 2011, Quaker filed two motions to dismiss: the current motion, which seeks dismissal under the first-to-file rule; and one to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Four days later, the California plaintiffs moved to intervene in this action to present their own motion to dismiss under the first-to-file rule. This court allowed the California plaintiffs to intervene, (R. 74), and they promptly filed their consent to this court's jurisdiction, (R. 75). This court denied Quaker's motion to dismiss this case for lack of subject matter jurisdiction, finding that Askin has alleged the requisite injury-in-fact to confer standing. (R. 72.) Having determined that jurisdiction exists, the next order of business is to resolve the intervening plaintiffs' and Quaker's motions to dismiss under the

4

first-to-file rule. In the current motions, Quaker and the intervening plaintiffs describe this

suit and the consolidated California action as "mirror-image" lawsuits, and request that this

case be dismissed in deference to the earlier filed cases. Askin asserts that there are material

differences between the parties, claims, and issues in the pending suits, and thus argues that

the first-to-file rule has no applicability here.

### Analysis

The first-to-file "rule" on which the movants rely in seeking dismissal of this lawsuit

is viewed in this circuit not as a hard-and-fast rule, but rather as a question of comity over

which the district court enjoys a great deal of discretion. *See Research Automation, Inc. v.*

*Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980-81 (7th Cir. 2010); *Trippe Mfg. Co. v.*

*American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (noting that "[t]his

circuit does not rigidly adhere to a 'first-to-file' rule"). The doctrine exists "to prevent

multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out

of common matters." *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th

Cir. 1977). In other words, the first-to-file principle is part of the district court's "inherent

power to administer their dockets so as to conserve scarce judicial resources" by avoiding

duplicative litigation. *Trippe*, 46 F.3d at 629. Cases are considered duplicative where "there

are no significant differences between the claims, parties, and available relief." *Serlin v.*

*Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993). When confronted with duplicative

litigation, the district court is authorized to dismiss, transfer, or stay a second-filed case under

the first-to-file principle. *See Id.* at 223; *Pfizer v. Apotex*, 640 F.Supp.2d 1006, 1007-08 (N.D. Ill. 2009).

Given that Askin's complaint in this case is largely a word-for-word copy of the consolidated complaint in California, there can be little debate that the allegations underlying both suits are almost identical. Both suits identify the same Quaker products as bearing misleading labels, identify the same key phrases—for example, "heart healthy," "wholesome," and "smart choice made easy"—as the sources of the misrepresentations, and cite the same studies to support their claims that the accused products contain ingredients that are dangerous to the consumer's health. Indeed, in his motion to transfer brought before the MDL panel, Askin characterized this case and the California cases as arising out of "a common core of operative factual allegations . . . premised upon the same factual basis that [Quaker] allegedly misrepresented the quality of certain of its food products (granola bars and oatmeal) because those food products contain trans-fat." (R. 48-6, Ex. F, MDL Mot. at 2.) In light of that admission, Askin can hardly argue with any credibility here that there are substantial differences in the underlying allegations.

Despite this admission, Askin now makes two vain attempts to distinguish what is at stake in this case from the claims pending in California. First, he argues that he is pursuing a theory that is unique to his case—Quaker "misled consumers to believe that the Quaker Oats granola bars and oatmeal products contained 0 grams of trans-fat, when, in fact, this was untrue, as the Products contained as much as 5 grams of trans-fat." (R. 81, Resp. at 3.) But

6

the four original actions in California *did* challenge Quaker's use of the "0g Trans Fat" label. As Askin is aware, that challenge does not appear in the current consolidated complaint in California because in ruling on Quaker's motion for judgment on the pleadings, Judge Seeborg determined that particular claim to be preempted by federal regulations. *See Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1121 (N.D. Cal. 2010). It appears that Askin may be arguing that even though the California plaintiffs originally attacked Quaker's use of the "0 grams trans-fat" label as misleading, only he claims it is misleading because there may be up to five grams of trans-fat in each box of granola bars. The California plaintiffs, by contrast, only claimed that there are trace amounts of trans fat in each individual serving. But contrary to Askin's assertion that this distinction renders his theories of liability much broader than the California plaintiffs', it really is a trivial difference of detail. In both suits, the question posed is whether the presence of some small amount of trans-fat in Quaker's granola bars renders its use of the "0 grams trans-fat" label misleading. Whether it is misleading because there are trace amounts in a single serving or because there may be up to five grams in the entire box, the core question presented is the same.

Askin also argues that the claims are not duplicative because the California actions are based on California's consumer fraud statute while this case is based on the ICFA and Illinois common law. But whether cases are substantially similar is a question of substance rather than form. *See Jaramillo v. DineEquity, Inc.*, 664 F.Supp.2d 908, 916 (N.D. Ill. 2009). As long as the underlying facts are the same, as is the case here, the fact that the two

complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis. *Id.* And even if the court were to consider the differences among the laws invoked in this case and the California actions, again those differences are insignificant. First, Askin has conceded in his response to Quaker's motion to dismiss pursuant to Rule 12(b)(6) that all of his claims based on Illinois common law—with the exception of his unjust enrichment claim—should be dismissed because "he does not contest that the requisite vertical privity has not been [pleaded] here." (R. 57, Resp. at 15.) Thus the only viable common-law claim is one for unjust enrichment, but because that claim is predicated on the same allegations as his fraud claims, the viability of his unjust-enrichment claim necessarily hinges on the resolution of the ICFA claim. *See Association Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Because the unjust-enrichment claim "is not a separate cause of action that, standing alone, will justify an action for recovery," *see Ciszewski v. Denny's Corp.*, 09 CV 5355, 2010 WL 1418582, at *3 (N.D. Ill. April 7, 2010) (quotation and citation omitted), it hardly provides a basis to substantively distinguish this case from the California actions. And even comparing the claims under the relevant California and Illinois statutes, the same underlying facts will be used to support the claims of deceptive practices—namely, the allegedly misleading labeling on Quaker's granola and oatmeal packages. Accordingly, this court agrees with the moving parties that the claims underlying the separate actions are substantially the same.

8

This court also determines that there is substantial similarity among the parties to this case and to the consolidated California actions. Askin half-heartedly argues that he has sued a different defendant than the California plaintiffs, pointing to their reference to "Quaker Foods, Inc.," rather than "The Quaker Oats Company," the named defendant here. But as the movants point out, the caption of all of the individual California suits as well as the consolidated complaint plainly lists "The Quaker Oats Company" as the named defendant.

Requiring closer scrutiny is Askin's argument that the plaintiffs in this action and the California actions substantially differ. True, the named plaintiffs are not the same, but recent cases from this and other districts make clear that the class members are the proper focus of this inquiry, *see Moore v. Morgan Stanley & Co.*, No. 07 CV 5606, 2007 WL 4354987, at *2 (N.D. Ill. Dec. 6, 2007); *Cabrini-Green Local Advisory Council v. Chicago Housing Auth.*, 04 CV 3792, 2005 WL 61467, at *7 (N.D. Ill. Jan. 10, 2005); *Nesbit v. Fornaro*, 2:11 CV 00092-PMP-GWF, 2011 WL 1869917, at *3 (D. Nev. March 31, 2011); *Ross v. U.S. Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1020 (N.D. Cal. 2008). Although for purposes of any preclusion analysis Askin cannot be considered a "party" to the California actions unless and until the proposed class there is certified, *see Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2379 (2011), for purposes of the first-to-file analysis, courts routinely look to the similarities of the proposed classes even where the court has not yet ruled on the certification question, *see, e.g., Jaramillo*, 663 F.Supp.2d at 916; *Herman v. Yellowpages.com, LLC*, 10 CV 195, 2011 WL 1615174, at *4 (S.D. Cal. March 29, 2011); *Cantanese v. Unilever*, 774 F.Supp.2d 684,

688 (D.N.J. 2011). Looking at the putative classes described here and in the consolidated complaint in California, there is little doubt that there is substantial, if not complete, overlap. Both seek to certify a class of persons who purchased Quaker products in the United States for their own use. (R. 22, Am. Compl. ¶ 90; R. 85, Ex. 1, First Am. Consol. Compl. ¶ 132.) Given that all of the named plaintiffs seek relief on behalf of a nationwide class, regardless of where within the United States the class members purchased or used the products, it is clear that if both classes were certified, the class members would be identical. Accordingly, the movants have shown that the parties to the consolidated California action are substantially similar to the parties in this case, for purposes of the first-to-file analysis.

Finally, this court does not discern any significant difference between the relief Askin seeks here and that sought by the California plaintiffs. Although Askin seeks relief stemming back to January 7, 2006, (R. 22, Am Compl. ¶ 2), and the California plaintiffs seek relief stemming back to February 3, 2006, (R. 85, Ex. 1, First Am. Consol. Compl. ¶ 132), the one-month difference in the five-year class periods hardly can be characterized as a substantial difference. Otherwise, the respective prayers for relief are nearly identical; both seek class certification, injunctive relief, disgorgement, restitution, and compensatory and punitive damages. Askin points out that his suit, unlike the California actions, seeks declaratory relief, but that hardly matters. Because a finding that Quaker has committed fraud is a necessary element of the California plaintiffs' claims, a request for a declaratory judgment to that effect does not render Askin's claims substantially different.

10

Even where suits pending in separate districts are duplicative, the Seventh Circuit has counseled that the "first-filed case may proceed where the principles that govern requests for transfer do not indicate otherwise." *Research Automation*, 626 F.3d at 980. Those principles include whether allowing the first-filed case to proceed furthers the "interests of justice" and the "convenience" of parties and witnesses. *Id.* at 978. As for the convenience factor, although there may be more witnesses located in Illinois at Quaker's headquarters, Quaker asserts that document production can move forward as easily in California as in any other jurisdiction. (R. 33, Mem. at 9.) And although typically some deference is given in the convenience analysis to a plaintiff's choice of forum, the court need not confer that deference where, as here, the plaintiff has brought a duplicative suit. *See Research Automation*, 626 F.Supp.3d at 979. More importantly, it is clear that the "interests of justice"—a term relating to the efficient administration of the federal courts—indicate that the California case should be prioritized. Judge Seeborg has been presiding over the consolidated actions for months and has already issued at least one opinion addressing substantive issues presented here. *See Chacanaca*, 752 F.Supp.2d at 1121. He has also identified the interim class counsel he considers particularly suited to handle the substantive issues leading up to the certification question. (R. 48, Marron Decl., Ex. D.) Because Judge Seeborg has invested significant time into the first-filed cases, giving that litigation preference will best protect judicial economy. Accordingly, this court concludes that there are no circumstances that weigh against giving preference to the first-filed California actions.

Having determined that this suit is indeed duplicative of the consolidated California actions and that the first-to-file doctrine applies, the obvious question becomes what to do about it. The movants insist on dismissal, but in their briefs they have ignored the elephant in the room—namely, the Seventh Circuit's decisions on the first-to-file rule making clear that even where suits are mirror-images, dismissal of the later-filed action is rarely the appropriate remedy. *See Central States, S.E. & S.W. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444-45 (7th Cir. 2000); *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 571 (7th Cir. 1990). In fact, the Seventh Circuit has instructed that "[w]hen comity among tribunals justifies giving priority to a particular suit, the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests." *Central States*, 203 F.3d at 444; *see also Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002) ("Even when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff"). Because dismissing a duplicative case is likely to lead to statute of limitations problems, it is usually "simpler just to stay the second suit." *Asset Allocation*, 892 F.2d at 571. In fact, the Seventh Circuit has suggested that "[o]utright dismissal is most likely to be appropriate when . . . the same party has filed all of the suits," *Central States*, 203 F.3d at 445; *see also Serlin*, 3 F.3d at 223-24, or where the second suit is harassing or vexatious, *see Asset Allocation*, 892 F.2d at 571. With a few exceptions, even the cases relied on by Quaker and the intervening plaintiffs in support of their motions to

12

dismiss resulted in a transfer or stay of the second-filed case, rather than outright dismissal. *See, e.g., Jaramillo*, 664 F.Supp.2d at 918 (granting motion to transfer); *Moore*, 2007 WL 4354987, at *3 (granting stay rather than dismissal); *Nesbit*, 2011 WL 1869917, at *3 (recommending grant of motion to stay); *Cantanese*, 774 F.Supp.2d at 691 (granting transfer in lieu of dismissal).

Because the movants have ignored the possibility of staying this case as a method of adhering to the first-to-file doctrine, they have not presented any arguments—other than the intervening plaintiffs' assertion that the California actions protect Askin's interests—to assure the court that Askin's rights will not be prejudiced if this case is dismissed outright. *See Central States*, 203 F.3d at 444. And without expressing any opinion on the merits of Askin's position regarding the viability of the California class actions, his argument demonstrates how dismissal could impact his rights here. Specifically, in arguing that the relevant suits are not duplicative, Askin asserts that the California plaintiffs will never succeed in certifying a nationwide class under California law because, according to him, California's consumer protection statute cannot apply to Askin or any other non-California residents. (R. 81, Resp. at 6; R. 86, Not. at 1-2.) If this court were to dismiss the current lawsuit and the California cases proceed to the outcome he predicts, there is a possibility that he will be foreclosed by the applicable statutes of limitations from pursuing the relief he seeks here, or at the very least, that the claims of some of the putative class members encompassed by the current proposed class definition will be foreclosed.

13

In determining whether a second-filed case should be stayed, this court considers: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Markel Am. Ins. Co. v. Dolan*, 787 F.Supp.2d 776, 779 (N.D. Ill. 2011)*; see also Pfizer*, 640 F.Supp.2d at 1007. Although Askin likely would prefer to move forward with his case with the goal of being the first to certify a nationwide class, as long as his individual claim is preserved in this court, there is no reason to think that allowing the California litigation to proceed will cause him undue harm. There is every reason to believe, on the other hand, that staying this litigation while the California cases proceed through the dismissal and certification stage will simplify the questions at issue here. Given the similarity of the claims, the California proceedings will simplify questions such as whether federal regulations leave room for state-law claims challenging Quaker's alleged misleading labeling practices. Allowing the California litigation to proceed to the certification stage also will prevent unnecessary duplication of both the underlying substantive questions regarding the viability of the plaintiffs' state-law claims and the appropriateness of allowing the claims to proceed on behalf of a nationwide class.

In light of the possibility of prejudice to Askin, the Seventh Circuit's clear instruction to avoid dismissal in the face of such possibilities, and this court's analysis of the relevant stay factors, this court concludes that staying this case pending progress in the California

action is the appropriate way to account for the first-to-file rule in this matter. *See Inforizons, Inc. v. VED Software Servs., Inc.*, 204 F.R.D. 116, 120 (N.D. Ill. 2001) (denying motion to dismiss under first-to-file rule but staying proceedings on court's own motion). Accordingly, this court stays this case until the district court in California decides the motion to dismiss currently pending there, and if the consolidated cases survive dismissal, the stay will remain in place until the class-certification question in the California cases is resolved.

## Conclusion

For the foregoing reasons, the motions filed by Quaker and the intervening plaintiffs to dismiss this case pursuant to the first-to-file rule are denied. But because this court determines that this action is in fact duplicative of the consolidated actions pending in California, the court stays this action pending the outcome of the currently ripe motion to dismiss pending in California and, if the consolidated actions survive dismissal, the class certification decision in the California actions.

**ENTER:**

Young B. Kim
**United States Magistrate Judge**

15